UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALAN ROGER HARRIS #408795,

    Petitioner,

v.                                                                    Case No. 2:06-cv-214
                                                                    HON. ROBERT HOLMES BELL

JERI-ANN SHERRY,

    Respondent.
_____/

## OPINION

        Petitioner Alan Roger Harris #408795 filed this petition for writ of habeas corpus challenging the validity of his state court convictions. On April 11, 2002, Petitioner was convicted by a jury of child sexually abusive activity in violation of MCL 750.145c(2). Petitioner was sentenced to 1½ to 20 years imprisonment. Petitioner appealed the conviction to the Michigan Court of Appeals and the Michigan Supreme Court. Petitioner's appeal was denied by the Michigan Supreme Court on August 30, 2005.

        Petitioner filed this application for habeas corpus relief on August 10, 2006, which set forth ten claims:

        I.        The trial court denied Petitioner permission to have Paula J. Werme, Esq. as attorney *pro hac vice*.

        II.       Absence of Petitioner at critical stage of trial, specifically closed-chamber conference where jury instructions submitted by defense counsel and the admission of Paula J. Werme, Esq. as counsel *pro hac vice* were discussed and denied by the judge.

        III.     Insufficient evidence - no child as defined in statute; since there was no child, there can be no crime. Also failure to

<blockquote>

IV. Improper jury instructions - "believe" for "know" [that "the child" was "a child".] and no instruction given on arranging for, producing, distributing, financing or possessing child pornography.

V. Ineffective assistance of trial counsel, David Fregolle, (subsequently disbarred from Michigan Bar on other grounds).

VI. Ineffective assistance of appellate counsel, Desiree Ferguson, Esq. of the Michigan State Appellate Defender's Office.

VII. Prosecutorial misconduct.

VIII. Inability to effectively participate in own defense because of bond condition that Petitioner not use a computer. Because Petitioner's attorney was unable to access files on the CD because he was not familiar enough with computers to do so, this condition hampered the defense to the point of making it a joke.

IX. No confrontation of hearsay testimony (computer files that recorded internet conversations) witnesses. This evidence was used despite the fact that the judge subsequently himself characterized the conversations as unreliable (at sentencing).

X. Sentence is a violation of Sixth Amendment right to trial by jury because sentence based on factors neither admitted by Petitioner or found by jury.

</blockquote>

allege or prove intent to arrange for, produce, distribute, finance, or possess child pornography.

The court initially noted that Petitioner had failed to exhaust his state court remedies with regard to claims VIII and X, and ordered the dismissal of these claims and that Petitioner be permitted to pursue his state court remedies on these claims. The court further ordered that Petitioner's remaining exhausted claims be held in abeyance pending completion of state-court review (docket #5 and #6). Petitioner subsequently conceded that he had failed to exhaust claims II, VIII and X, and requested that he be allowed to drop his unexhausted claims and proceed only on

the exhausted claims. Petitioner's request was granted. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

The Michigan Court of Appeals summarized the underlying facts as follows:

> A Wayne County Sheriff's deputy, assigned to the Internet Crime Unit, was patrolling the Internet on May 19, 2000, when he entered a chat room for men looking for younger women or discussions about sexual relations between fathers and daughters. The deputy used the name "Prom Queen 2003" and was kicked out of the chat room because the monitor suspected that the user was too young to be in that room. Shortly thereafter, "Prom Queen 2003" received a message from defendant, who used the name "ARH2." After "Prom Queen 2003" informed defendant that "she" was only fourteen years old, defendant and "Prom Queen 2003" continued to engage in a one-on-one online chat, and exchanged pictures. [FN The deputy sent defendant a decoy photograph of a female.] During their conversation, they discussed sexual matters and having sexual relations. They also made plans to meet at a restaurant. When defendant appeared at the restaurant at the prearranged time, he was arrested.

*People v. Harris*, Michigan Court of Appeals No. 242766, slip op. 1.

Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district

court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This

presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

As noted above, Petitioner claims that the trial court denied him permission to have Paula J. Werme, an attorney licensed in the State of New Hampshire and not admitted to practice in Michgan, admitted to appear pro hac vice at trial,. The Michigan Court of Appeals made the following findings with regard to this issue:

> The record indicates that Werme was allowed to assist defense counsel at trial, but the trial court understood that she would not be conducting any examination of witnesses or presenting any argument. It is not apparent from the record that Werme ever contemplated playing a more active role at trial. If it was her intent to do so, she failed to make this known to the court during the discussions concerning the scope of her participation at trial. Therefore, the record does not support defendant's claim that trial counsel was ineffective for not moving for Werme's admission to appear on defendant's behalf. Moreover, a defendant is not denied the effective assistance of counsel where he is denied the right to be represented by a second attorney of choice.

*People v. Harris*, Michigan Court of Appeals No. 242766, slip op. 6.

As noted above, the factual findings of the Michigan Court of Appeals are presumed to be correct. In addition, as noted by Respondent, Petitioner's own appellate counsel declined to add this issue to Petitioner's brief in the appeal of right, stating:

> I do not agree that the *Fett* case is material to any issue in your case. The *Fett* case, which I enclose for your records, holds that the trial court violated the defendant's right to be represented by the attorney of his choice by denying his motion for pro hac vice status. There

> was no such ruling in your case, because no one sought pro hac vice status for Ms. Werme.
>
> I understand your position that trial counsel failed to file such a motion at your request. But, as I see it, it is an attorney's prerogative not to share co-counsel status with another attorney. If he is unwilling to do so, then it is incumbent upon the client to discharge the attorney, or if he is appointed, to seek the appointment of substitute counsel. Nothing precluded you from doing this. Nothing precluded Ms. Werme from seeking pro hac vice status on her own, through the sponsorship of another Michigan attorney, then representing you, with or without Mr. Fregolle.

(Respondent's Exhibit 1, correspondence from Assistant Public Defender Desiree M. Ferguson to Petitioner, dated August 28, 2003.) Finally, Respondent notes that Ms. Werme's own website indicates that she cannot represent someone in a state other than New Hampshire. *See* http://nhdcyf.info/.

In Petitioner's response to the answer, he merely claims that "Respondent cannot state with . . . certainty that Ms. Werme did not request pro hac vice status." In addition, Petitioner states that Ms. Werme's assertion on her website that she does not take out of town clients is merely a device for thinning her client load. However, Petitioner fails to set forth any specific factual allegations in support for his claim that Ms. Werme actually attempted to obtain pro hac vice status. Consequently, Petitioner's first claim is properly denied for lack of merit.

As noted above, Petitioner has dropped claim II because it was unexhausted. In claim III, Petitioner asserts that there is insufficient evidence to support his conviction. A conviction is supported by sufficient evidence if, when "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir.2008) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original)). However, in a habeas proceeding, the

court cannot simply conduct a de novo review of the state court's application of that rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of AEDPA. Petitioner in this case can be granted habeas relief only if the Michigan Court of Appeals unreasonably applied the *Jackson* standard. *See Getsy v. Mitchell,* 495 F.3d 295, 315-16 (6th Cir.2007) (en banc) (whether the petitioner is entitled to habeas relief ultimately depends on whether the state court's denial was based on an unreasonable application of clearly established federal law regarding the sufficiency of the evidence.). The court's task is "to determine whether it was objectively unreasonable for the state court to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that Petitioner committed the essential element of the crimes charged beyond a reasonable doubt. *See Nash v. Eberlin,* 258 Fed. Appx. 761, 765 (6th Cir.2007).

When reviewing whether the state court's determination was "objectively unreasonable," the court must engage in a two-step analysis. First, the court must ask whether the evidence itself was sufficient to convict under *Jackson*. The inquiry ends if it is determined that there was sufficient evidence to convict Petitioner. If the court finds that the evidence is insufficient to convict, it must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *Id.* The law therefore "commands deference at two levels." *Tucker,* 541 F.3d at 656.

Petitioner claims that because he was not actually communicating with a child on the internet, his conduct did not violate the statute. Petitioner also asserts that the statute requires that he actually knew that the person he was communicating with was a child, thus he should not have

been found guilty of violating the statute. As noted by Respondent, at the time of the offense, MCL 750.145c(2) provided:

> A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material is guilty of a felony, punishable by imprisonment for not more than 20 years, or a fine of not more than $100,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know that the child is a child, or that person has not taken reasonable precautions to determine the age of the child.

*People v. Harris*, Michigan Court of Appeals No. 242766, p. 2 (2004).

In addressing this issue, the Michigan Court of Appeals noted that the statute required mere preparation to engage in child sexually abusive activity in order to establish a violation. The Michigan Court of Appeals therefore rejected Petitioner's claim that he could not be convicted of child sexually abusive activity because "Prom Queen 2003" was not an actual child. The Michigan Court of Appeals further stated that because the MCL 750.145c(2) provides for a violation where a defendant has reason to know or should reasonably expect that the individual involved was a child, the prosecution was not required to prove that Petitioner actually knew "Prom Queen 2003" was a child. *People v. Harris*, Michigan Court of Appeals No. 242766, p. 2 (2004). After reviewing the record, the court concludes that the evidence was sufficient to establish that petitioner committed the crime. The Michigan Court of Appeals decision was not contrary to, or involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; nor did it result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In claim IV, Petitioner asserts that the jury instructions were improper. In order to show a constitutional violation, petitioner must demonstrate that the instruction violated due process. *Henderson v. Kibbe*, 431 U.S. 145, 153 (1977).

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," . . . not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,'" . . . .

431 U.S. at 154.

In instructing the jury regarding the elements of the crime, the trial court stated:

> First, that the Defendant attempted or prepared for child sexually abusive activity and that term will be defined for you. Second, that the Defendant intended to engage in sexual intercourse, masturbation, and/or sexually [sic, sexual] excitement. *Third, that the Defendant believed the intended victim was a child or believed it to be a child.* [Emphasis added.]

*People v. Harris*, Michigan Court of Appeals No. 242766, p. 3. Petitioner asserts that this instruction was erroneous because the statute actually requires a defendant to know or have reason to know that the child is a child, rather than merely believe that to be the case.

In addressing this issue, the Michigan Court of Appeals stated:

> To the extent the trial court's instructions did not perfectly comport with MCL 750.145c, reversal is not required. The trial court instructed the jury that it could only convict defendant if it found that he believed the intended victim was a child. The instruction given was actually more favorable to defendant than the instruction defendant contends should have been given. The court's instruction required the jury to find that defendant subjectively believed that the intended victim was a child. In contrast, the language of MCL 750.145c(2) allows a person to be convicted of that offense if he has reason to know or should reasonably have been expected to know that the intended victim is a child. Because the court's substitution of the

> term "believed" for "knew" did not lessen or change the prosecutor's burden in proving the elements of the offense, reversal is not warranted.

*People v. Harris*, Michigan Court of Appeals No. 242766, p. 4.

The court finds that the Michigan Court of Appeals' conclusion on this claim is neither incorrect nor unreasonable in light of the facts and pertinent law. Therefore, Petitioner's claim regarding the jury instructions is properly denied.

Petitioner also asserts the ineffective assistance of his trial counsel. To prevail on an ineffective assistance of counsel claim, a convicted defendant must demonstrate (1) that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-96 (1984). Stated another way, this court is to decide whether petitioner's trial counsel's alleged failures were such egregious errors as to constitute ineffectiveness and whether the alleged failures were materially prejudicial. The Sixth Circuit has explained:

> The question for reviewing courts is whether counsel's errors have likely undermined the reliability of, and confidence in, the result. *Lockhart v. Fretwell*, 113 S.Ct. 838, 842-43 (1993). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Strickland*, 466 U.S. at 691, *quoted in Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). In evaluating petitioner's claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc), cert. denied*, 113 S. Ct. 2969 (1993). Thus, the determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *See id.*

*West v. Seabold*, 73 F.3d 81,84 (6th Cir. 1996).

Petitioner claims that his trial counsel was ineffective because he did not have a trial strategy two weeks before trial. In addressing this issue, the Michigan Court of Appeals noted that Petitioner failed to provide evidentiary support for this claim. Furthermore, the Michigan Court of Appeals noted that trial counsel's alleged lack of preparedness two weeks before trial does not establish that trial counsel was unprepared at the time of trial. *People v. Harris*, Michigan Court of Appeals No. 242766, p. 6.

Petitioner also claims that trial counsel was ineffective for failing to have Paula Werme admitted to appear pro hac vice at trial. As noted above, Petitioner was not denied the effective assistance of counsel where he was denied the right to be represented by a second attorney of choice.

Petitioner further contends that his trial attorney was not familiar with the Rules of Evidence. However, as noted by the Michigan Court of Appeals, Petitioner failed to support this claim on appeal with any appropriate citations to the record. Therefore, the Michigan Court of Appeals deemed the issue waived. *People v. Harris*, Michigan Court of Appeals No. 242766, p. 6. Therefore, Petitioner's contention on this issue lacks merit. Petitioner states that trial counsel properly objected to the admission of ten photographs of child pornography found on Petitioner's computer, of which Petitioner claims he was unaware. However, Petitioner asserts that the court failed to rule on the objection and the material was admitted. The court notes that Petitioner was neither charged with nor convicted of possession of child pornography. Petitioner fails to show how he was prejudiced by this admission. Moreover, because his attorney objected to the admission, Petitioner cannot show that his attorney was ineffective in this regard.

Petitioner further claims that his attorney was ineffective because he did not initially know how to access the discovery material that was provided by the prosecutor on computer disks. The Michigan Court of Appeals concluded that because this problem was eventually resolved and counsel was able to access the information, Petitioner did not suffer prejudice. *People v. Harris*, Michigan Court of Appeals No. 242766, p. 7. In the answer to the habeas corpus petition, Respondent notes that Petitioner was quite familiar with computer operation and Ms. Werme has a website of her own, so she should have been able to assist. Finally, as noted by Respondent, Petitioner concedes that a police officer was sent to trial counsel's office to show him how to open the records. Petitioner contends:

> Because of my bond condition that I not USE a computer while out on bond, I found out about this on the first day of trial (jury selection), and Attorney Fregolle, along with my chosen, but not admitted pro hac vice attorney, Paula J. Werme, and I had to work almost 20 hour days during the trial week as a result. The prosecution had to send a police officer-witness to Attorney Fregolle's office to show him how to open the records of conversations they were intending to use in trial on the night before testimony began. Because Attorney Fregolle had never seen much of the evidence, we wound up working extensive hours to prepare for each days proceedings. One night we stayed in his office until almost 3:00 a.m. because he had not prepared.

*See* petition for habeas corpus relief, p. 14, ¶ (a)(1).

Petitioner fails to state any specific facts supporting his assertion that he was prejudiced as a result of this incident. The fact that his attorney prepared for trial in a last minute fashion does not by itself support a finding that he was ineffective for purposes of the Sixth Amendment. Therefore, Petitioner's claim for habeas corpus relief regarding his attorney's knowledge of computers is properly denied.

Petitioner also claims that his attorney failed to articulate why reciept of the balance of the hard drive contents was extremely important to the defense. Petitioner asserts that he could not possibly remember everything in his computer, and that there might have been exculpatory information that was not discovered because of his attorney's incompetence. However, Petitioner's vague assertions that there may have been exculpatory information on his hard drive that was not discovered is not sufficient to support a finding that he was prejudiced by the failure to obtain access to the hard drive.

Petitioner also cites his attorney's failure to prevail on his attempt to submit hard copies of internet conversations that tended to be exculpatory. Petitioner states that these were kept out by the trial court as "unreliable hearsay." However, Petitioner fails to specify the exact nature of these conversations. Moreover, it appears from this claim that Petitioner's counsel attempted to keep the conversations from being admitted, but that his attempts were overruled by the trial court. Such an assertion does not support a finding of ineffective assistance of counsel.

Petitioner claims that his trial counsel failed to research the basic case law on MCL 750.145c, asserting that the purpose of the statute was to deter production, distribution, financing, and possession of child pornography. However, as noted by the Michigan Court of Appeals, the statute is not limited to activity surrounding the production of pornography. *People v. Harris*, Michigan Court of Appeals No. 242766, p. 7. Therefore, Petitioner's claim that trial counsel was ineffective in this regard lacks merit.

Petitioner offers the affidavit of Paula J. Werme, in which she attests that attorney Fregolle was ineffective because he did not know how to coherently object. (*See* Exhibit 15 to Petitioner's habeas corpus application.) In the affidavit, Ms. Werme states that Petitioner's trial counsel did not know how to think on his feet and could not recall the proper grounds for objecting.

However, as noted by the Michigan Court of Appeals, Ms. Werme fails to identify specific instances of deficient performance. The Michigan Court of Appeals stated that "Werme's vague and generalized allegations about trial counsel's performance are insufficient to demonstrate that trial counsel's performance fell below an objective standard of reasonableness, or that the outcome of the trial was thereby affected." *People v. Harris*, Michigan Court of Appeals No. 242766, p. 7. Therefore, this claim is properly denied.

Petitioner contends that trial counsel was ineffective for not giving the closing statement prepared by Werme. However, as noted by the Michigan Court of Appeals Petitioner fails to explain the basis for his claim that trial counsel's closing statement was improper or prejudicial. Consequently, the Michigan Court of Appeals considered the issue waived. In addition, this court notes that Petitioner's assertion that trial counsel's closing statement was "ridiculous" fails to show that he was prejudiced by the closing statement. *People v. Harris*, Michigan Court of Appeals No. 242766, p. 7.

Petitioner claims that trial counsel was ineffective for permitting him to use a list of questions and answers when testifying. However, as noted by the Michigan Court of Appeals, Petitioner has not shown that he was prejudiced by this conduct. Petitioner also claims that his attorney was ineffective for not immediately withdrawing when Defendant asked him to do so. However, the Michigan Court of Appeals found that the record does not factually support this claim. Petitioner informed the court that he wanted to terminate his retained attorney and obtain appointed counsel after the jury returned the verdict. The trial court advised Petitioner that he could discharge his attorney, but until substitute counsel had entered an appearance, retained counsel would remain Petitioner's attorney. There is no indication that Petitioner was prejudiced by his trial attorney's remaining the attorney of record after the verdict had been returned.

In his last three claims of ineffective assistance of counsel, which Petitioner did not raise in his direct appeal, Petitioner claims that during trial, the prosecution stated in the hallway within earshot of defense witnesses, that there was some concern regarding trial counsel's stability. Petitioner also asserts that his trial attorney violated the rules of professional conduct in inducing Petitioner to retain him because he did not reveal that he was not court appointed until after the bail hearing, at which point he told Petitioner that he would have to pay for his services. Finally, Petitioner claims that his attorney failed to submit a jury instruction on the wording of the statute to include "arranging for, producing, distributing, financing or possessing child pornography. However, none of these claims demonstrate that Petitioner was prejudiced by his attorney's conduct during trial.

Petitioner also claims that his appellate attorney was ineffective for refusing to raise each individual claim of ineffective assistance of trial counsel on appeal. The Michigan Court of Appeals addressed Petitioner's claim that he did not receive the effective assistance of his appellate counsel and found that because trial counsel was not ineffective, it necessarily follows that appellate counsel was not ineffective in failing to raise these claims. *People v. Harris*, Michigan Court of Appeals No. 242766, p. 6. However, the above review of each claim of ineffective assistance of trial counsel, including those not raised in Petitioner's appeal, reveals that while trial counsel appears to have been ineffective in some instances, Petitioner has failed to show that he suffered any prejudice as a result of trial counsel's conduct. Nor has Petitioner shown that the outcome of the trial would have been different if not for the asserted ineffectiveness. Therefore, as noted by the Michigan Court of Appeals, appellate counsel's failure to raise each instance was not ineffective. As noted above, "counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d

222, 229 (6th Cir. 1992) (*en banc), cert. denied*, 113 S. Ct. 2969 (1993). The court concludes that Petitioner has failed to show that the performance of either his trial or appellate counsel was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *See id.*

Petitioner's seventh habeas corpus claim asserts prosecutorial misconduct. Petitioner alleges that he was charged with a felony, when he should have been charged with a misdemeanor, and that the overcharge was misconduct. Ultimately, the issue for the Court is whether the prosecutor's conduct denied petitioner a fundamentally fair trial. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940 (1982). *See also United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994) (adopting test for evaluation of prosecutorial misconduct on direct review); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348 (6th Cir. 1993) (applying similar test to habeas action). Inappropriate remarks or conduct by a prosecutor constitute a matter of constitutional concern only when it is egregious enough to deprive the defendant of a fair trial. *See United States v. Chambers*, 944 F.2d 1253 (6th Cir.), *cert. denied*, 112 S. Ct. 1217 (1992); *United States v. Mohney*, 949 F.2d 1397, 1400 (6th Cir. 1991), *cert. denied*, 112 S. Ct. 1940 (1992); *Paprocki v. Foltz*, 869 F.2d 281 (6th Cir. 1989).

In addressing this issue, the Michigan Court of Appeals noted that it was not necessary that an actual child victim be involved in order to establish a violation of MCL 750.145c(2). The Michigan Court of Appeals additionally rejected Petitioner's suggestion that MCL 750.145c is limited to conduct involving the production of sexually abusive visual material. Petitioner relied on *People v. Ward*, 206 Mich. App. 38, 42-43 (1994), which stated that the purpose of the statute was to combat the use of children in pornographic movies and photographs and to prohibit the production and distribution of child pornography. However, the Michigan Court of Appeals noted that *Ward* also stated that the statute was focused on "protecting children from sexual

exploitation, assaultive or otherwise." *People v. Harris*, Michigan Court of Appeals No. 242766, p. 5. The Michigan Court of Appeals also stated:

> Furthermore, former MCL 750.145c(1)(h) [now MCL 750.145c(1)(k)] defined "[c]hild sexually abusive activity" as "a child engaging in a listed sexual act." Former MCL 750.145c(1)(e) [now MCL 750.145c(1)(g)] defined "[l]isted sexual act" as "sexual intercourse, erotic fondling, sadomasochistic abuse, masturbation, passive sexual involvement, sexual excitement, or erotic nudity." Amongst the conduct expressly proscribed by MCL 750.145c is "arrang[ing] for . . . any child sexually abusive activity *or* child sexually abusive material" (emphasis added). Thus, contrary to what defendant argues, the statute is not limited to conduct involving the production of sexually abusive visual material.

*People v. Harris*, Michigan Court of Appeals No. 242766, p. 5.

Finally, the Michigan Court of Appeals noted that Petitioner's reliance on *People v. Coleman*, 350 Mich. 268, 278-279 (1957) and *People v. Burton*, 252 Mich. App. 130, 141, 147 (2002) were misplaced because the defendants in those cases were charged with attempts alone, while the statute at issue here, MCL 750.145c, specifically prohibits a person from arranging for child sexually abusive activity. *People v. Harris*, Michigan Court of Appeals No. 242766, p. 5. The court finds the decision of the Michigan Court of Appeals on this issue is not unreasonable in light of the facts of the case, nor is it contrary to established federal law.

Petitioner also claims that the prosecutor improperly presented prior bad acts evidence without sufficient notice to trial counsel. However, as noted by Respondent, Petitioner failed to raise this issue in the state courts. On appeal, Petitioner raised the claim as one for error in the admission of evidence under MRE 404b, with no reference to prosecutorial misconduct. In addition, Petitioner's other claims of prosecutorial misconduct were not raised as such in his appeal. The court notes that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court. *Wong v. Money*, 142 F.3d 313, 322

(6th Cir. 1998). The court concludes that Petitioner's second prosecutorial misconduct claim rests on a theory which is separate and distinct from the one previously considered and rejected in state court. In addition, Petitioner's other assertions of prosecutorial misconduct were never raised as such in the Michigan Court of Appeals. Petitioner does not even argue that he can show cause and prejudice. Therefore, the court finds that Petitioner has procedurally defaulted on these claims.

Finally, Petitioner claims that his rights under the Confrontation Clause were violated because "there was no confrontation of witnesses because the people were anonymous." Initially, the court notes that this issue was raised in the Michigan Court of Appeals as one of ineffectiveness of trial counsel. Therefore, pursuant to *Wong v. Money*, 142 F.3d at 322, Petitioner is barred from raising it in his habeas corpus petition without a showing of cause and prejudice for the failure to present the claim in state court. Because Petitioner has failed to make such a showing, the court finds that Petitioner has procedurally defaulted on this claim.

In summary, the court concludes that Petitioner's claims are without merit and will therefore dismiss the petition with prejudice.

THEREFORE, IT IS ORDERED that the petition is DISMISSED with prejudice.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. Aug. 27, 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a

certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Because Petitioner has failed to show that his conviction was in violation of his rights under federal law, the Court finds that reasonable jurists could not find that this Court's dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.


Dated: <u>May 22, 2009</u>                    /s/ Robert Holmes Bell
                                              ROBERT HOLMES BELL
                                              UNITED STATES DISTRICT JUDGE